Board of Commissioners of Howard County v. Legg, Administrator.

Filed Feb. 23, 1884.

---

No. 10,902.

BOARD OF COMMISSIONERS OF HOWARD COUNTY *v.* LEGG, ADMINISTRATOR.

BRIDGES.—*Counties.*—*Negligence.*—Counties are liable if by negligence they fail to keep bridges on county roads in a reasonably safe condition for ordinary use, if there be no contributory negligence by the person injured. *Aliter*, if the bridge be part of a township road and under the control of township officers, and it is immaterial by whom the bridge was built, or whether it be large or small.

SAME.—*Complaint.*—The complaint must show that the bridge is one over which the county has control.

SAME.—*Effect of Averment that Plaintiff was without Fault.*—Where the complaint avers that the plaintiff was without fault, it will be good unless the facts specifically pleaded clearly show contributory negligence.

93 523
130 246
93 523
181 262
93 523
138 614
139 377
93 523
152 419

Board of Commissioners.of Howard County *v.* Legg, Administrator.

SAME.—*Notice of Defects.*—To establish negligence on the part of the county, notice of the defects of the bridge, either express or implied, must be shown.

SAME.—*Pleading.*—*Evidence.*—In an action against a county for injuries received on account of a defective county bridge, the general denial admits proof that the bridge was not under the control of the county, and also that the person injured was guilty of contributory negligence, and there can therefore be no error in sustaining demurrers to answers averring these facts, if the general denial be pleaded.

SAME.—*Decay of Timbers.*—*Notice.*—*Care.*—Ordinary care only is required .of counties as to bridges under their control, but they are chargeable with knowledge that the timbers thereof will decay, and with the duty of reasonable care to provide against the consequences thereof.

SAME.—The law in force when an accident occurs by reason of a defective bridge fixes the duty of the county concerning the bridge.

SAME.—*Measure of Damages.*—*Husband and Wife.*—*Parent and Child.*—The measure of damages in such cases is confined to pecuniary loss, and this does not embrace a wife's loss of the companionship of her husband, but it does include a child's loss of a parent's care and training.

INSTRUCTIONS.—*Modification of.*—*Practice.*—An incorrect instruction may be refused, or the court may, in its discretion, so modify it that it will be correct.

From the Hamilton Circuit Court.

*J. O'Brien* and *C. C. Shirley,* for appellant.

*D. Waugh, D. Moss, R. R. Stephenson* and *W. S. Christian,* for appellee.

ELLIOTT, J.—It is the law of this State that counties are charged with the duty of keeping in reasonably safe condition for ordinary use all bridges owned by them, and that they are liable to one, who is himself free from negligence, for injuries proximately resulting from a neglect to perform this duty.   *Board, etc.,* v. *Brown,* 89 Ind. 48 ; *Board, etc.,* v. *Deprez,* 87 Ind. 509 ; *State, ex rel.,* v. *Board, etc.,* 80 Ind. 478 ; S. C., 41 Am. R. 821 ; *State, ex rel.,* v. *Demaree,* 80 Ind. 519 ; *Board, etc.,* v. *Pritchett,* 85 Ind. 68 ; *House* v. *Board, etc.,* 60 Ind. 580 ; S. C., 28 Am. R. 657 ; *Pritchett* v. *Board, etc.,* 62 Ind. 210 ; 1 Thomp. Neg. 618 ; 2 Dillon Munic. Corp. (3d ed.), sec. 998.

We see no reason to doubt the soundness of the cases de-

claring this doctrine. They rest upon the principle that where organized public bodies are provided with means for erecting and maintaining bridges, and are charged with the duty of maintaining them, they must discharge this duty with reasonable care and diligence. It is upon this principle that all the cases rest, and many of them there are, which hold municipal corporations liable for negligence in failing to maintain streets and alleys in repair. It is true that many American cases, losing sight of the fact that in this country counties are regularly organized and invested with power and means to maintain bridges, while in England it is otherwise, have followed the holding in the old case of *Russell* v. *Men of Devon*, 2 T. R. 667; and declared that there is no liability on the part of counties for a failure to keep bridges in a safe condition. The later cases recognize the fact that in principle the American cases holding this doctrine are not sound. Thus, in *Altnow* v. *Town of Sibley*, 30 Minn. 186, S. C., 44 Am. R. 191, we find a learned judge yielding to precedent, but saying: " I find it hard to distinguish in principle between cities and towns in respect to their liability for neglect of the duty imposed upon them to repair street and highways."

The complaint must show that the bridge was one over which the county authorities had control, for, unless this appears, there is no liability. *Board, etc.,* v. *Deprez, supra, vide* authorities cited, p. 512.

It is charged in the third paragraph of the complaint before us, that the appellant had for more than ten years prior to the time appellee's intestate was injured, maintained the bridge ; that the bridge formed a part of a public highway in the county of Howard ; and that it was the duty of the defendants to keep the bridges on the public highway in the county of Howard in repair. We think that these allegations show that the bridge was one over which the county had control and which it was bound to maintain. The complaint is essentially different from that in the case of *Board, etc.,* v. *Deprez, supra,* for it is here averred that it was part of a pub-

lic highway in the county, and had been maintained by the county for more than ten years; while in the case cited the bridge was shown to be within an incorporated city.

Where the complaint avers that the plaintiff was without fault, it sufficiently negatives contributory negligence. Where this allegation is made the complaint will stand, unless it clearly appears from the facts stated that the plaintiff was guilty of negligence proximately contributing to the injury. *Rogers* v. *Overton*, 87 Ind. 410; *City of Washington* v. *Small*, 86 Ind. 462; *Town of Rushville* v. *Poe*, 85 Ind. 83; *Murphy* v. *City of Indianapolis*, 83 Ind. 76; *Pittsburgh, etc., R. W. Co.* v. *Wright*, 80 Ind. 182; *Town of Salem* v. *Goller*, 76 Ind. 291. In the present case, the facts, instead of showing contributory negligence, go far to show that there was none.

Knowledge that a bridge or highway is unsafe or defective is always an important consideration on the question of contributory negligence, but it does not follow that wherever there is knowledge there is negligence. *Toledo, etc., R. W. Co.* v. *Brannagan*, 75 Ind. 490; *City of Huntington* v. *Breen*, 77 Ind. 29; *Murphy* v. *City of Indianapolis*, 83 Ind. 76; *Henry Co. Turnpike Co.* v. *Jackson*, 86 Ind. 111 (44 Am. R. 274); *Board, etc.*, v. *Brown*, 89 Ind. 48. If the complaint in this case had failed to aver that the intestate was ignorant of the unsafe condition of the bridge, it would, nevertheless, have been good, because it contains the general allegation that he was free from fault.

Under the general denial it was competent for the appellant to prove that the bridge was not one over which the county authorities had control and for which the county was liable to be called to account for a failure to repair, and, also, to prove that the appellee's intestate was guilty of contributory negligence. The affirmative matter pleaded in the paragraphs to which demurrers were sustained was admissible under the general denial, for it went only to questions of the ownership of the bridge, and of contributory negligence on

the part of the intestate, and there was, therefore, no error in sustaining demurrers to these paragraphs.

The question of negligence is seldom one of law for the court. It is generally a question for the jury, to be submitted under proper directions of the court. In this case, the question as to whether the intestate was or was not negligent in driving on the bridge in a particular manner was one of fact for the jury and not of law for the court. It would, therefore, have been error to have instructed the jury that the intestate was guilty of negligence in driving on the bridge in the manner specified in the seventh instruction asked by the appellant.

It is true that a county is liable only on the ground of negligence, and it is not enough, in any case, for the plaintiff to show that there was a defect in the bridge, and that this defect was the cause of injury. He must show that the defect was caused by the negligence of the county in constructing the bridge, or that after notice of the existence of the defect the county negligently omitted to remedy it. Notice is imperatively required, but it is not essential that it should be express. Where the circumstances are such as imply notice, then notice is considered to be sufficiently established. If the defect has existed for such a length of time as that the county ought to have had knowledge, then it will be charged with notice. We regard the instructions upon this point as substantially correct.

In assuming, as some of the instructions asked by the appellant did, that the appellee was bound to show that the bridge was built by the county, an error was incorporated which justified their rejection. A county, which adopts a bridge erected by others, is bound to the same extent as if it had originally constructed it. *State, ex rel.*, v. *Demaree*, 80 Ind. 519.

Unless the instructions are correct in terms the court is not bound to give them. A party must show that the instruc-

tions refused were in such terms as made them express the law correctly, or there is no error in refusing them. It is not the duty of the court to amend, correct, or modify instructions, although it may, if it chooses, make amendments or corrections. *Lawrenceburgh, etc., R. R. Co.* v. *Montgomery*, 7 Ind. 474; *Roots* v. *Tyner*, 10 Ind. 87; Charging Jury, section 86; Prof. Jur. 440.

If the bridge described in the complaint and evidence was a county bridge, and formed a part of a county highway, then the size of the bridge would not be material, for whatever its size, large or small, the county would be bound to use ordinary care and diligence to keep it in safe condition for travel. *Board, etc.,* v. *Brown*, 89 Ind. 48. If the bridge is part of a township road and is under the control of the township authorities, and not of the county officers, then there is no liability on the part of either the county or township. This is so, for the reason that counties are responsible only for county bridges; while townships, not being provided with means for repairing bridges, are not liable in any case for failure to repair. *Yeager* v. *Tippecanoe Township*, 81 Ind. 46. It is, however, to be observed that the structure must be a bridge within the meaning of the law, for it is only to bridges that our former decisions apply. Whether the same duty rests upon counties with respect to highways as is cast upon them respecting bridges, is a question yet to be determined. Whether a structure is or is not a bridge is an issue made by the general denial, and the *onus* is always upon the plaintiff.

County officers are chargeable with knowledge of the tendency of timber to decay, and it is incumbent upon them to use reasonable care in providing against the timbers of a bridge becoming unsafe because of the decay incident to age and long use. They are not bound, however, to do more than use ordinary care, and if they act with reasonable care and diligence there is no liability. *City of Indianapolis* v. *Scott*, 72 Ind. 196; *Rapho* v. *Moore*, 68 Pa. St. 404 (8 Am. R. 202). The duty of a county respecting the maintenance of bridges

is to be determined by the law in force at the time the accident occurred, and not by laws subsequently enacted. As the plaintiff's intestate received the injuries which caused his death in September, 1880, we are to look to the statutes then in force, and not to those subsequently adopted.

It may be in the discretion of the county commissioners to discontinue bridges in some instances; but whenever they choose to exercise this discretion, conceding that they possess it, they should not negligently leave the bridge in an unsafe and dangerous condition without placing warning signals about it, or without in some way notifying those who have a right to use the bridge that it has ceased to be a county charge. Whether the commissioners have such a discretion, or when it may be exercised, are questions which it is not now necessary to decide, for there was no affirmative showing that there had been an attempt to exercise it, nor was there any showing that the bridge had ceased to be within the control of the board.

In cases of the class to which this action belongs only pecuniary damages are recoverable. There is great unanimity in the authorities upon this general principle, and thus far the question is free from embarrassment. It is not, however, easy to determine what damages shall be considered pecuniary. In *Tilley* v. *Hudson River R. R. Co.*, 24 N. Y. 471, it was held that children who were deprived of the nurture and training of their mother were entitled to recover for the loss of such nurture and training, and that in a just sense their loss was a pecuniary one. This doctrine is re-affirmed in *Tilley* v. *Hudson River R. R. Co.*, 29 N. Y. 252; *McIntyre* v. *New York Central R. R. Co.*, 37 N. Y. 287. These cases are based on a statute much more limited in its operation than ours, for it, in terms, restricts the recovery to pecuniary loss. A like course of reasoning upon a similar statute is pursued in *Pennsylvania R. R. Co.* v. *Keller*, 67 Pa. St. 300. It must, therefore, be held that the loss which may be taken into

account is not confined to a loss of actual services, capable of a direct and exact money admeasurement. 3 Sutherland Dam. 382. This question is broadly presented by the appellant's instruction, which the court modified, but we can not consider the question as to the alleged modification of the instruction asked for the reason that the record does not show what the supposed modification was. It is necessary in order to bring before this court a ruling modifying an instruction, to affirmatively show in what respect the court modified it. *Patterson* v. *Indianapolis, etc., P. R. Co.*, 56 Ind. 20; *Helms* v. *Wayne, etc., Co.*, 73 Ind. 325 (38 Am. R. 147). In this case it it not shown by the bill of exceptions wherein the court modified the instruction asked by the appellant. The question, therefore, turns upon the correctness of the instruction given at the request of the appellee.

The only part of the instruction given which can fairly be the subject of debate is that which reads thus: " Compensation may also be made for the loss of a parent's care and training to the children in their support, education and maintenance, and the loss by the wife of her husband's companionship." The cases we have already referred to sustain this instruction in so far as it declares that the right of the children to the care and training of the father should be taken into account in estimating the damages, and there are other well considered cases to the same effect. In *Castello* v. *Landwehr*, 28 Wis. 522, an instruction to the same effect as the particular part of the one given in this case which we are now considering, was sustained, and declared to be in harmony with the cases of *Potter* v. *Chicago, etc., R. W. Co.*, 21 Wis. 372, and *Potter* v. *Chicago, etc., R. W. Co.*, 22 Wis. 615. A similar conclusion was declared in *Illinois Central R. R. Co.* v. *Weldon*, 52 Ill. 290; and in the cases of *Matthews* v. *Warner*, 29 Grat. 570, S. C., 26 Am. R. 396, and *Beeson* v. *Green Mountain, etc., Co.*, 57 Cal. 20, the rule is carried still farther. The rule rests on solid principle. The care, training and education which a father can give his children may justly be

regarded as increasing their capacity to make their way in the world, and this capacity, surely, may be valuable even in a pecuniary sense.

There remains for consideration the last clause of the instruction, which presents this question: Is a wife entitled to compensation for the loss of the companionship of her husband? In *Ohio, etc., R. R. Co.* v. *Tindall*, 13 Ind. 366, it was held that it was error to charge the jury that they might take into consideration "such other circumstances as have injuriously affected the plaintiff in person, in peace of mind, and in happiness," and declared that only what was susceptible of pecuniary estimate could be recovered as damages. The doctrine of the case cited is approved in *Pennsylvania Co.* v. *Lilly*, 73 Ind. 252, the court holding that only pecuniary loss can be considered in estimating damages. The rule which these cases enforce is supported by the very decided weight of authority. Thompson says: "It has been almost universally held that the principle under which damages are to be assessed under these statutes is that of pecuniary injury, and not as a *solatium*. No compensation can be given for wounded feelings, or the loss of comfort and companionship of a relative." 2 Thompson Neg. 1289. The doctrine is stated in substantially the same terms by other writers. 5 Southern L. Rev. 346; *Burke* v. *Cork*, 10 Cent. L. J. 48, *vide* n., p. 51. In speaking of the meaning to be annexed to the term pecuniary damages, the Court of Appeals of New York, in *Tilley* v. *Hudson River R. R. Co.*, 24 N. Y. 471, said: "The word *pecuniary* was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, can not be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship of relatives, which are equally incapable of being defined by any recognized measure of value." Commenting upon this case a text-writer says that this statement "embodies the in-

terpretation which seems to have been adopted by the courts."
2 Sedgwick Dam. (7th ed.), 535, n.   The case of *Pennsylva-
nia R. R. Co.* v. *Goodman*, 62 Pa. St. 329, is cited by coun-
sel as declaring a different doctrine, but we think that case
will hardly bear such a construction.   In that case the clause
of the instruction upon which the question arose reads thus:
" The law is, that the damages for such an injury are to be a
pecuniary compensation, to be measured by the value of the
loss of service and companionship sustained by the plaintiff."
The court said, in commenting on this instruction:

" But all the judge said on this point made it evident he did
not mean compensation by way of solace, and could not
have been so understood by the jury.   Companionship was
evidently used to express the relation of the deceased in the
character of the service she performed.   He merely meant to
say that the loss should be measured by the value of her
services as a wife or companion."

It is very evident from this reasoning that the instruction
was sustained, not because it declared that damages might be
given as a *solatium*, but because, when properly construed,
it affirmed that the value of the services as a wife or com-
panion was not to be considered in estimating the damages.
Any other interpretation of the decision would carry it into
plain conflict with many other decisions of the same court.
*Pennsylvania R. R. Co.* v. *Kelly*, 31 Pa. St. 372; *Pennsylvania
R. R. Co.* v. *Zebe*, 33 Pa. St. 318; *Pennsylvania R. R. Co.* v.
*Keller, supra; North Penn. R. R. Co.* v. *Robinson*, 44 Pa. St.
175.   The case of *Beeson* v. *Green Mountain, etc., Co*, 57 Cal.
29, can hardly be regarded as authority upon this point, for the
California statute is essentially different from ours, as well as
from the English statute.   But, if it were in point, its weight
is much impaired by the fact that the chief justice and two of the
associate justices dissented.   By some authors the case of *City
of Atchison* v. *Twine*, 9 Kan. 350, is cited as an authority in
favor of the proposition, that the loss to the wife of the com-
panionship of the husband is to be considered as an element in

the admeasurement of damages, but, as the question was neither discussed nor directly considered in that case, we do not think it should be ranked as an authority upon the point. The adjudged cases and the text-writers unite in the opinion that *Blake* v. *Midland R. W. Co.*, 18 Q. B. 93 (83 Eng. Com. L. 93), is the leading case upon this subject, and that it correctly expresses the law. In that case it was held to be the duty of the court to direct the jury that nothing but damages for a pecuniary loss should be awarded, and that damages could not be given as a *solatium* to the surviving relatives. We think that the instruction given in the present case violates the rule declared by these authorities.

If we could say, as was said in the Pennsylvania case, that the clause referring to the wife's loss of her husband's companionship meant and was used simply to express " the relation of the deceased in the character of the service " he performed, then, possibly, we might be able to sustain the instruction; but the whole frame and tenor of the instruction forbid such a result. It can not be doubted that the language employed conveys the meaning that the loss of companionship is, in and of itself, an element to be considered in computing damages.

Judgment reversed.

